IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AAA LIFE INSURANCE COMPANY,** :    **Plaintiff**                         :                                            :     **v.**                                                        :                                            :    **DEBORAH A. KNEAVEL, GUIDETTA** :    **ALICE KNEAVEL, MARY A.**         :    **McALLISTER, and ST. JUDE**           :    **CHILDREN'S RESEARCH HOSPITAL,** :       **Defendants**                : | **CIVIL ACTION NO. 1:10-CV-00158**<br><br>**(Judge Conner)** |

## MEMORANDUM

In this interpleader proceeding, plaintiff AAA Life Insurance Company has filed suit against all parties that are or were potential beneficiaries under a $100,000 life-insurance policy issued by AAA to one Clemens J. Kneavel, who died on November 8, 2009. AAA acknowledges that proceeds on the policy "are due and owing to someone," but reports that it "is in great doubt as to which defendant is entitled to be paid some or all of the policy proceeds and has accordingly brought this action in an effort to resolve its doubt in this regard." (Doc. 1, ¶¶ 12, 10.)

It has thus fallen to the defendants to pursue their respective claims in this forum to some or all of the proceeds from Clemens' policy. St. Jude Children's Hospital was voluntarily dismissed on September 19, 2011 (Doc. 44), but three defendants remain. The answers to the complaint, cross-claims, and recently adjudicated cross-motions for summary judgment have pitted defendant Deborah A. Kneavel against defendants Guidetta Alice Kneavel and Mary A.

McAllister[1] as the rival camps in the contest for the proceeds of the life-insurance policy.

Presently before the court is the motion (Doc. 39) of defendant Deborah A. Kneavel, which seeks to preclude Guidetta from introducing evidence of an alleged oral contract between her and her deceased brother Clemens. For the reasons that follow, the motion will be denied.

**I.    Background**

The core and undisputed facts of this case are fairly straightforward. On April 15, 1995, Clemens J. Kneavel applied for a $100,000 group life-insurance term policy with an effective date of June 15, 1995. (Doc. 11-2, at 1–2.) Dues were to be paid annually. (Id. at 2.) All premiums on the policy were properly paid. (Doc. 1, ¶ 7, Doc. 1; Doc. 10, ¶ 7; Doc. 11, ¶ 7.) Clemens died on November 8, 2009 (Doc. 1, at 6, 7), and AAA "offers to and is ready to deposit the proceeds" of the $100,000 policy "with the Court on the entry of an appropriate order" (Doc. 1, ¶ 12), leaving only the question of to whom the proceeds should be remitted.

During the time that Clemens held the life-insurance policy with AAA, he submitted at least nine Request for Change Beneficiary/Name (RCBN) forms to AAA. (Doc. 1, at 8–18; Doc. 10-1; Doc. 26-5; Doc. 26-9; Doc. 26-11.) The original policy application listed Clemens' sister, Guidetta, as the sole beneficiary (Doc. 11-1, at 1,

---

[1] Although Mary has not filed responsive pleadings or otherwise stated a claim for the proceeds of the policy, Guidetta's attorney, Douglas P. France, filed a notice of appearance on Mary's behalf. (Doc. 18.)

2), but numerous RCBN forms submitted over the years changed (or were intended to change) distribution of the proceeds of the policy. Only those forms relevant to the instant dispute receive discussion. The first RCBN was signed in August or September 2001, left Guidetta as the primary beneficiary with an entitlement to 100% of the proceeds, and named Mary McAllister, another sister of Clemens', as the 100% contingent beneficiary. (Doc. 1, at 8, 18; id. at 12.) The first RCBN form to designate anyone other than Guidetta or Mary as a beneficiary under the policy bears a date of March 21, 2006, and names Deborah, Clemens' wife as of April 16, 2006, as a 60% beneficiary, with 30% to (Guidetta) Alice and 10% to Mary. (Id. at 17; Doc. 26-4.) Other RCBN forms filed through April 2008 varied the entitlement amounts of the three women in Clemens' life. (Doc. 1, at 8, 11–17.)

Most significant to the dispute at hand are the last three RCBN forms. The form signed August 18, 2008, lists Deborah as a 75% beneficiary and Guidetta as a 25% beneficiary. (Doc. 1, at 8, 11.) Less than a month later, on September 11, 2008, Clemens signed another RCBN naming, as the life-insurance policy originally did, Guidetta as the sole beneficiary with a 100% entitlement to the policy proceeds. (Id. at 10.)

The final RCBN form is dated October 31, 2008, just eight days before Clemens died. There are two copies of this form in the record. Both name Deborah as a 95% beneficiary, Guidetta as a 5% beneficiary, and Mary as a 5% contingent beneficiary. One does not bear Clemens' signature or mark; Deborah had taken the unsigned, unmarked form to the bank, where it was notarized and faxed to AAA.

3

(Id. at 9; Doc. 26, ¶¶ 10–11.) Deborah contends that she took the notarized form home and reviewed it with Clemens, who "insisted that he make his mark on the document." (Doc. 26, ¶ 12–13.) Clemens, whom Deborah described as weak and close to death, did not have the strength to write; she said she held his wrist as he scratched an "X" on the signature line of the RCBN form. (Id. ¶ 14; Doc. 26-11.) Deborah then mailed the form bearing Clemens' mark to AAA. (Doc. 26, ¶ 15.)

The circumstances surrounding the creation, submission, and marking of the final RCBN form are hotly disputed. It is in the apparent attempt to cool the dispute and narrow the issues surrounding who gets what of Clemens' policy that Deborah filed the pending motion. If it were successful, it would thoroughly undercut Guidetta's primary argument on the merits of this case: that she had entered into an oral contract with Clemens that prevented him from legally changing the beneficiary of his life-insurance policy.

## II.  Discussion

As noted above, Guidetta claims that Clemens entered into an oral contract with her, under which Guidetta was to be named the sole, irrevocable beneficiary of Clemens' life-insurance proceeds. If Guidetta's claim proves true, then any RCBN inconsistent therewith, including the final one dated October 30, 2009, that named Deborah as 95% beneficiary, is invalid.

Deborah's argument in support of her motion in limine has two major facets First, she argues that the personal representative of Clemens' estate is an indispensable party to this action, meanwhile noting that Clemens' estate has had

no personal representative appointed. Second, she maintains that the Dead Man's Act, 42 Pa. Cons. Stat. Ann. § 5930, precludes Guidetta from testifying about the existence of an oral contract between her and Clemens. Each argument will be addressed in turn.

### A.  Clemens' Estate as an Indispensable Party

Deborah's indispensable-party argument runs thus. She characterizes Guidetta's oral-contract claim (and its consequences for the validity of the RCBN forms) as a breach-of-contract claim. (Doc. 39, ¶ 12.) Since the party that allegedly breached a contract is an indispensable party to an action regarding an alleged breach, and since neither Clemens (being dead) nor his estate (or its representative) have been made parties to this action, allowing Guidetta to testify about an oral contract between her and Clemens would violate various provisions of Federal Rule of Civil Procedure 19 and subject Deborah to prejudice in a number of unfortunate ways. (Id. ¶¶ 13–20.) Deborah concludes that the only way to avoid this prejudice is to take "other measures" as mentioned in Fed. R. Civ. P. 19(b)(2)(C), to wit: exclude Guidetta's testimony.

Deborah correctly observes that in breach-of-contract actions, all parties to the contract should be joined, Rashid v. Kite, 957 F. Supp. 70, 73 (E.D. Pa. 1997) (citing Travelers Indem. Co. v. Household Int'l, Inc., 775 F. Supp. 518, 527 (D. Conn. 1991), and Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc., 456 F. Supp. 831, 837 n.7 (D. Del. 1978)), but her argument is unsuccessful for two reasons.

First, Guidetta's claim need not be construed as a breach-of-contract claim. True, Guidetta contends that Clemens' change of beneficiaries violated the alleged oral contract, but she does not seek to recover from Clemens (or his estate) for this breach; she is claiming that the existence of the oral contract renders all of Clemens' attempts to change beneficiaries invalid. Guidetta's allegation of an oral contract is thus a simple predicate to her argument that she is entitled to 100% of the policy's proceeds rather than a breach-of-contract claim per se.

Second, Clemens' estate has no present interest in the dispute or in any contract that might have affected Clemens' right to change beneficiaries of his life-insurance policy. The estate is not and was never a potential beneficiary. Further, under express the terms of his policy, Clemens' executory authority over the provisions of his insurance contract clearly terminated upon his death. (See Doc. 26-1, at 1, 5 ("A member's insurance . . . will terminate on the earliest of the following dates: . . . 5. The date the insured dies . . . .").) Clemens' estate has no present ability to change beneficiaries under the policy, and has no potential liability for any improper attempts to change beneficiaries that Clemens might have made during his lifetime.

Accordingly, Clemens' estate is not an indispensable party to this action, and Deborah's argument to this effect does not entitle her to have Guidetta's testimony excluded. Moreover, since Deborah will not face the prospect of "defend[ing] against an alleged oral contract to which she is not a party," (Doc. 40, at 9),

6

Guidetta's testimony about the oral contract that she alleges will cause Deborah to suffer no prejudice.

### B. The Dead Man's Act

Deborah argues that the Dead Man's Act, 42 Pa. Cons. Stat. Ann. § 5930, effectively bars any testimony from Guidetta as to the existence and terms of the alleged oral contract. (Doc. 40, at 8–9.) The purpose of such a bar to testimony is to prevent the surviving party from presenting favorable, untruthful testimony about the contract's terms without the possibility of rebuttal from the deceased party or his representative. Punxatawney Mun. Airport Auth. v. Lellock, 745 A.2d 666, 670 (Pa. Super. 2000) (citing In re Estate of Hall, 535 A.2d 47 (Pa. 1987)).

> As Deborah correctly stated in a previous brief (Doc. 36, at 9):
>
> Under the Dead Man's Act three conditions must exist before the surviving party or witness is disqualified: "(1) the deceased must have had an actual right or interest in the matter at issue, i.e., an interest in the immediate result of the suit; (2) the interest of the witness—not simply the testimony—must be adverse; (3) a right of the deceased must have passed to a party of record who represents the deceased's interest."

Weschler v. Carroll, 578 A.2d 13, 15 (Pa. Super. 1989) (quoting In Re Hendrickson's Estate, 130 A.2d 143, 146–47 (Pa. 1957)).

However, Deborah's argument for the application of the Dead Man's Act fails because there is unquestionably no "right of the deceased" that "passed to a party of record who represents the deceased's interest." As stated in Part II.A *supra*, neither Clemens' estate nor any putative representative of the estate has or would have any interest in the matter at issue and, quite appropriately, is not a party of

7

record in this action. Deborah's Dead Man's Act argument accordingly does not entitle her to bar Guidetta's oral-contract testimony.

## III. Conclusion

For the reasons set forth above, the court will deny Deborah's motion in limine (Doc. 39) to preclude Guidetta from introducing evidence of the alleged oral contract between her and Clemens.

An appropriate order follows.

                                          S/ Christopher C. Conner
                                          CHRISTOPHER C. CONNER
                                          United States District Judge

Dated:        March 15, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AAA LIFE INSURANCE COMPANY,** : **Plaintiff** : : v. : : **DEBORAH A. KNEAVEL, GUIDETTA** : **ALICE KNEAVEL, MARY A.** : **McALLISTER, and ST. JUDE** : **CHILDREN'S RESEARCH HOSPITAL,** : **Defendants** : | **CIVIL ACTION NO. 1:10-CV-00158** **(Judge Conner)** |

## **ORDER**

AND NOW, this 15th day of March, 2012, upon consideration of Deborah A. Kneavel's motion in limine (Doc. 39) to preclude Guidetta Alice Kneavel from introducing evidence of the alleged oral contract between her and Clemens J. Kneavel, it is hereby ORDERED that the motion in limine (Doc. 39) is DENIED.

                                                              S/ Christopher C. Conner
                                                         CHRISTOPHER C. CONNER
                                                         United States District Judge