IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AAA LIFE INSURANCE COMPANY,** | : | CIVIL ACTION NO. 1:10-CV-00158 |
| Plaintiff | : | |
| v. | : | (Judge Conner) |
| | : | |
| **DEBORAH A. KNEAVEL,** | : | |
| **GUIDETTA ALICE KNEAVEL,** | : | |
| **MARY A. McALLISTER**, and | : | |
| **ST. JUDE CHILDREN'S RESEARCH** | : | |
| **HOSPITAL,** | : | |
| Defendants | : | |

**MEMORANDUM**

Presently before the court for judgment is the complaint (Doc. 1) against defendants Deborah A. Kneavel, Guidetta A. Kneavel, Mary A. McAllister, and St. Jude Children's Research Hospital. A non-jury trial was held on April 11 and 12, 2012. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the court's findings of fact and conclusions of law are set forth below.

**I.   Findings of Fact**

1.  On January 10, 2010, plaintiff AAA Life Insurance Company ("AAA") commenced the above-captioned interpleader action, asking this court to determine the proper distribution of $100,000.00 in death benefits payable to the beneficiary of a life insurance policy owned by Clemens Kneavel ("Clemens").[1]

---

[1] Because many of the parties in this matter share the last name "Kneavel," where appropriate the court will refer to them by their first names.

2. AAA named Clemens' wife Deborah Kneavel ("Deborah"), Clemens' sisters Guidetta Alice Kneavel ("Alice") and Mary McAllister ("McAllister"), and the St. Jude Children's Research Hospital ("St. Jude").

3. McAllister and St. Jude acknowledged prior to trial that they did not assert claims to the policy proceeds.

4. Clemens was born in 1948, and passed away from liver cancer on November 8, 2009. Deborah was born June 9, 1952. Alice was born July 28, 1946.

5. After graduating from high school, Clemens was drafted into the army and served in the Vietnam War.

6. Upon his return from Vietnam, Clemens suffered from a variety of mental health issues, including post-traumatic stress disorder, anger management problems, and substance abuse problems.

7. Due at least in part to his mental health problems, Clemens had difficulty maintaining steady employment after his military service. In the years after his discharge, Clemens was employed only sporadically and did not maintain long-term employment.

8. From the early 1970s through 1988, Clemens lived sporadically with a number of relatives, including his stepmother and Alice.

9. Between 1988 and 2003, with the exception of an 18 month prison sentence from 1996 to 1997, Clemens lived continuously with Alice.

10. During this period, Clemens was substantially financially dependent upon Alice. He received a monthly partial disability benefit from the Veterans Administration, in the amount of a few hundred dollars each month. Clemens would seek increases in his benefits as he was diagnosed with other service-related mental health issues.

11. Recognizing that Alice incurred great expense in supporting Clemens, and that Clemens was unable to provide for himself, Alice and Clemens' stepmother suggested to Alice that a life insurance policy be taken out on Clemens' life, naming Alice as the beneficiary. The purpose of the policy proceeds would be to compensate Alice for her long-term support of Clemens.

12. On April 15, 1995, Alice prepared an application for a AAA life insurance policy in the amount of $100,000.00. This application was signed and dated by Clemens, and named Alice as the sole beneficiary.

13. Under the terms of the policy, Clemens, as the insured life, could "change the beneficiary at any time" unless otherwise restricted by law. (D. Kneavel Ex. 1, at 6). This statement in the policy is the only writing that exists pertaining to Clemens' ability to change the beneficiary.

14. The life insurance policy was purchased as part of an oral agreement between Clemens and Alice. The terms of the agreement were that Clemens would be permitted to live with Alice without paying rent,

       Alice would pay for and provide necessities and living expenses, and Alice would pay the premiums on the life insurance policy. In exchange for this consideration, Alice would remain the beneficiary of the policy.

15. Shortly after purchasing the policy, Clemens indicated to McAllister that he had "taken out a policy" naming Alice as beneficiary, "and that it was meant for [Alice's] benefit when he was no longer there." Clemens also informed McAllister that Alice was to pay the premiums on the policy. (Trial Transcript, April 12, 2012, at 76, ll. 5-18).

16. From the time the policy was purchased until Clemens' death, Alice paid the policy premiums. At some point during the fourteen year life of the policy, Clemens made a single premium payment, for which Alice repaid him.

17. Clemens met Deborah in April of 2003. Clemens and Deborah began living together in June of 2003. There was occasional friction between Clemens, Alice, and Alice's husband Bob Craley. However, Clemens' decision to move out of Alice's house and into Deborah's residence was voluntary.

18. Clemens and Deborah were married on April 16, 2006.

19. Between 2006 and 2009, Clemens attempted to effectuate a change of the beneficiary designation for his life insurance policy on nine

separate occasions. Clemens' attempted beneficiary changes were as follows:

    a.    March 21, 2006 – Deborah 60%, Alice 30%, McAllister 10%

    b.    October 25, 2006 – Deborah 10%, Alice 30%, McAllister 60%

    c.    December 18, 2006 – Deborah 80%, McAllister 10%, St. Jude 10%

    d.    July 19, 2007 – Deborah 90%, St. Jude 10%

    e.    September 20, 2007 – Deborah 80%, McAllister 20%

    f.    April 13, 2008 – Deborah 70%, Alice 20%, McAllister 10%

    g.    August 18, 2008 – Deborah 75%, Alice 25%

    h.    September 11, 2008 – Alice 100%

    i.    October 31, 2009 – Deborah 95%, Alice 5%

20. Clemens' frequent beneficiary changes were precipitated by anger management issues, with Clemens abruptly changing the beneficiary when he was angry with a particular person.

21. Clemens was diagnosed with liver cancer in February of 2006.

22. As he neared the end of his life, Clemens expressed to Maureen Malina, the social worker who worked with Clemens and his family during his time in hospice, that he was aware that he could return to Alice's house in the event that Deborah was unable to care for him, and that he did in fact stay with Alice one weekend. (See Trial Transcript, April 12, 2012, at 110-13).

23. Clemens made funeral arrangements through Harkins Funeral Home. Disagreement arose as to whether Alice or Deborah was meant to pay for the costs of the funeral, with Deborah ultimately paying for the funeral partially out of pocket, and partially with a separate insurance policy not at issue in this case.

## II. Conclusions of Law

1. Pennsylvania law governs this diversity of citizenship action. See Borse v. Piece Goods Shop, Inc., 963 F.2d 611, 614 (3d Cir. 1992).

2. Pursuant to the policy terms, Clemens was entitled to change the beneficiary of the policy unless otherwise restricted by law. This provision is clear and unambiguous, and therefore "the intent [of the parties] is to be gleaned exclusively from the express language of the agreement." General Refractories Co. v. Ins. Co. of North America, 906 A.2d 610, 612 (Pa. Super. 2006) (quoting Del. Cnty. v. Del. Cnty. Prison Emps. Indep. Union, 552 Pa. 184, 189 (1998)).

3. Pennsylvania law is clear that an agreement not to change the beneficiary of a life insurance policy, entered into by the insured individual and his or her designated beneficiary for a valuable consideration, is binding and may be enforced in equity against subsequently named beneficiaries. Torchia on Behalf of Torchia v. Torchia, 499 A.2d 581, 582-84 (Pa. Super. 1985).

4. As the court held in its Memorandum and Order (Doc. 59), dated March 15, 2012, although Alice's argument that she is entitled to the proceeds of the life insurance policy is predicated on the existence of an oral contract, she is not bringing a breach of contract claim *per se*, because she does not seek to recover from Clemens' estate. (Id. at 6). Rather, her argument is that the *existence* of her oral contract with Clemens rendered all of his efforts to change the beneficiary of the policy invalid, and therefore she is entitled to proceeds as the policy's sole beneficiary. (Id.)

5. In King v. Supreme Council Catholic Mut. Ben. Ass'n, 65 A. 1108 (Pa. 1907), the Pennsylvania Supreme Court addressed a situation factually similar to that presented here. In King, the holder of a benefit certificate named his wife as the beneficiary, agreeing that he would never change the beneficiary except to name one of the wife's children, provided that she paid the assessments and charges upon the certificate. Id. The wife relied upon this representation, paying the charges out of her separate estate. Without the wife's knowledge or consent, the husband substituted his brother as the beneficiary. Id. The wife brought a claim for the proceeds against the Benefit Association, interpleading the husband's brother. The Court awarded the proceeds to the wife, holding that "by equitable principles, . . . [the husband] waived his right to substitute another beneficiary to [his

7

wife's] exclusion." See id. at 1109; id. ("It is impossible to regard this as anything but a present assignment to take effect and attach as soon as the fund came into existence."); see also Hundertmark v. Hundertmark, 93 A.2d 856, 858-59 (Pa. 1953) (agreement in divorce settlement between former husband to maintain his ex-wife as beneficiary of a policy upon which he paid the proceeds and was the insured life was enforceable against the husband's second wife); Pennsylvania R. Co. v. Wolfe, 52 A. 247, 248-49 (Pa. 1902) (holding that a husband's agreement to maintain the wife as beneficiary of a certificate after the two were married gave the wife "a vested right in the benefit, a right not dependent on [the husband's] will or whim, but one no longer in his power, as between him and her, to confer or withhold," and that equity therefore demanded granting the wife the proceeds).

6. In order to show that Clemens' repeated attempts to change the beneficiary of the policy were invalid, Alice must prove by clear and convincing evidence that a contract existed between her and Clemens not to change the beneficiary, and that Deborah does not have superior equity. See Visnik v. Mance, 191 A. 127, 129 (Pa. 1937).

7. Pennsylvania contract law generally states that a contract is enforceable when the parties reach mutual agreement, exchange

consideration, and have outlined the terms of their agreement. <u>Greene v. Oliver Realty, Inc.</u>, 526 A.2d 1192, 1194 (Pa. Super. 1987).

8. In situations – such as the one presented here – where the parties did not record their agreement in writing but rather agreed orally, "courts look to surrounding circumstances and the course of dealings between the parties . . . to ascertain the intention of the parties." <u>Westinghouse Elec. Co. v. Murphy, Inc.</u>, 228 A.2d 656, 659-60 (Pa. 1967) (citing <u>Silverstein v. Hornick</u>, 103 A.2d 734 (1954)); <u>see also</u> <u>Greene</u>, 526 A.2d at 1194.

9. To effectuate the intent of the parties, a court may look to their actions, and contract terms that were previously unclear may be clarified by partial performance. <u>Id.</u>

10. Alice and Clemens created a contract whereby Alice would provide Clemens with lodging and support, and would pay the premiums for the insurance policy, in exchange for the consideration of being the sole beneficiary of the life insurance proceeds.

11. Clemens' absence from Alice's residence beginning in 2003 did not constitute a breach of this contract by Alice because Clemens' decision to move out was strictly voluntary. Indeed, Clemens' acknowledged near the end of his life that he could return to Alice's house at any time. Significantly, Alice continued to pay the premiums on the insurance policy up until the time of Clemens' death.

12. Clemens' repeated efforts to change the beneficiaries of the policy, including the final attempted change dated October 31, 2009 – which apportioned the proceeds in the amount of 95% to Deborah and 5% to Alice – would constitute material breaches of his contract with Alice, and therefore do not negate Alice's claim to the entirety of the proceeds.[2]

13. Alice maintained her obligations under the agreement by paying the premiums of the policy, providing room and board to Clemens, and allowing Clemens to return whenever he so desired.  The court concludes that Alice has demonstrated by clear and convincing evidence that a valid contract existed at the time of Clemens' death, under which she was entitled to the proceeds of the insurance policy, notwithstanding Clemens' repeated attempts to alter the policy's beneficiary.  The court finds therefore that Alice is entitled, under principles of equity, to the proceeds of the insurance policy, in the amount of $100,000.00.

---

[2] The parties dispute whether Clemens was competent at the time he attempted to effect his final change to the beneficiary form, due to his rapidly deteriorating health and the pain medication that he was administered.  The court finds that each of Clemens' attempts to change the beneficiary are invalid as a result of his pending oral contract with Alice.  Hence, it is not necessary for the court to determine whether Clemens was in fact competent to effect the October 31, 2009 change of beneficiary.

**III.** **Conclusion**

For the aforementioned reasons, the court finds in favor of Guidetta Alice Kneavel, and will award her the $100,000.00 in death benefits from the AAA life insurance policy held by Clemens Kneavel. An appropriate order will issue.

S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:   September 17, 2012

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AAA LIFE INSURANCE COMPANY,** | : | **CIVIL ACTION NO. 1:10-CV-00158** |
| **Plaintiff** | : | |
| v. | : | **(Judge Conner)** |
| | : | |
| **DEBORAH A. KNEAVEL,** | : | |
| **GUIDETTA ALICE KNEAVEL,** | : | |
| **MARY A. McALLISTER**, and | : | |
| **ST. JUDE CHILDREN'S RESEARCH** | : | |
| **HOSPITAL,** | : | |
| **Defendants** | : | |

## **ORDER**

AND NOW, this 17th day of September, 2012, upon consideration of the complaint (Doc. 1), filed January 21, 2010, and following a bench trial held on April 11 and 12, 2012, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. AAA Life Insurance Company shall pay the proceeds of policy certificate number 279-0857442, in the amount of $100,000.00, to Guidetta Alice Kneavel.

2. The Clerk of Court is directed to CLOSE the case.


   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge